**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION TO SUPPRESS** |
| vs. | ) | |
| | ) | |
| David Alan Wierenga, | ) | Case No. 1:22-cr-171 |
| | ) | |
| Defendant. | ) | |

Before the Court is David Alan Wierenga's "Motion to Suppress" filed on December 19, 2022. See Doc. No. 19. The Government filed a response in opposition to the motion on January 10, 2023. See Doc. No. 24. The Court held a hearing on the motion on February 22, 2023. The Defendant filed a post-hearing brief on March 3, 2023. See Doc. No. 31. The Government filed a post-hearing brief on March 10, 2023. See Doc. No. 32. For the reasons set forth below, the motion is denied.

**I.   BACKGROUND**

The Court held a suppression hearing on February 22, 2023. Three law enforcement officers testified at the hearing: Ward County Sherriff's Deputy Dustin Westerman, Minot Police Department Officer Andrew Mehlhoff, and Minot Police Department Officer Carrie Stanfield. The factual background is derived from their testimony, as well as the law enforcement reports, affidavits, body camera footage, and other documentation in the record.

On June 7, 2022, North Dakota District Court Judge Richard L. Hagar signed an arrest warrant for David Alan Wierenga, finding there was probable cause to arrest Wierenga for committing the crimes of terrorizing, harassment, and menacing. Officer Carrie Stanfield

requested Deputy Dustin Westerman assist her in effecting an arrest on Wierenga on the North Dakota State Fairgrounds ("fairgrounds"). Law enforcement coordinated with Wierenga's employer to aid in locating him and to take him into custody without making a scene.

After arriving at the fairgrounds Deputy Westerman conducted a check of vehicles registered to Wierenga based on the concern of potential flight. He discovered Wierenga was the registered owner of a silver Hyundai Tiburon. Deputy Westerman observed a silver Hyundai Tiburon in the fairgrounds parking lot consistent with the vehicle registered to Wierenga. The vehicle did not display any license plates and was incorrectly badged with emblems of a BMW rather than a Hyundai. Deputy Westerman blocked the Hyundai Tiburon into its parking space with his patrol vehicle to ensure officer safety and to prevent Wierenga from fleeing.

Contact was made with Wierenga and he was placed under arrest for the crimes of terrorizing, harassment, and menacing. Officer Stanfield placed Wierenga in handcuffs. Wierenga was not advised of his *Miranda* rights. Law enforcement officers conducted a search of Wierenga's person. Multiple vehicle keys were found. Wierenga requested the keys be given to his employer. Deputy Westerman asked Wierenga which vehicle he was driving that day. Wierenga stated he was driving a silver Hyundai Tiburon and motioned to the vehicle Deputy Westerman had previously observed and blocked in with his patrol vehicle. Deputy Westerman asked Wierenga why the license plates were not correctly displayed on the vehicle. Wierenga informed Deputy Westerman it was due to the hardware design on the blank metal plates. Wierenga was then transported to the Ward County Jail.

Deputy Westerman took a closer look at the Hyundai Tiburon, which was parked in a public parking space on the fairgrounds. He observed license plates on the passenger front seat floorboard that matched the registration of the Hyundai Tiburon registered to Wierenga. Deputy Westerman

also observed a firearm case on the passenger seat of the vehicle. Minot Police Officer Andrew Mehlhoff informed Deputy Westerman that Wierenga was prohibited from possessing firearms due to a court order involving mental health. After obtaining the keys from Wierenga's employer, Deputy Westerman and Officer Mehlhoff searched the vehicle. After Deputy Westerman discovered the firearm case was empty, Officer Mehlhoff found a firearm in the center console of the vehicle.

On September 14, 2022, Wierenga was indicted in federal court. See Doc. No. 1. The indictment charges Wierenga with one count of possession of firearms and ammunition by a prohibited person in violation of 18 U.S.C. §§ 922(g)(4) and 924(a)(2).

## II. LEGAL DISCUSSION

### A. IDENTIFICATION OF THE VEHICLE

Wierenga contends law enforcement's failure to read him his *Miranda* rights before asking him to identify his vehicle warrants suppression. The Government maintains the question elicited nothing more than routine biographical information which does not require *Miranda* warnings.

The Fifth Amendment of the United States Constitution provides a privilege against self-incrimination. Given this Fifth Amendment privilege, certain procedural safeguards must be employed prior to the interrogation of an individual by law enforcement officers. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Individuals must be informed of their (1) right to remain silent, (2) any statements made can be used against them at trial, (3) the right to have an attorney present during questioning, and (4) if an attorney is not affordable, one will be appointed. Id. at 478-79.

"*Miranda* warnings are required when a suspect is interrogated while in custody." United States v. Aldridge, 664 F.3d 705, 711 (8th Cir. 2011). For purposes of *Miranda*, an individual is

in custody when he is either formally arrested or his freedom of movement is constrained to a degree equivalent with formal arrest. United States v. Brave Heart, 397 F.3d 1035, 1038 (8th Cir. 2005). Interrogation of a suspect, as conceptualized by the United States Supreme Court, refers to express questioning or its functional equivalent "that the police should know [is] reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). Accordingly, an officer must advise a suspect of his *Miranda* rights when (1) the officer expressly questions the suspect, or its equivalent, and (2) the officer should know the questioning is reasonably likely to elicit an incriminating response from the suspect.

One exception to the *Miranda* rule is the routine booking question exception. United States v. Brown, 101 F.3d 1272, 1274 (8th Cir.1996). "It is well-settled that routine biographical data is exempted from *Miranda's* coverage." Id. (citing Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990)). This exception is rooted in the idea that questioning that is not reasonably likely to elicit an incriminating response does not require *Miranda* warnings. United States v. McLaughlin, 777 F.2d 388, 391 (8th Cir. 1985). In *McLaughlin*, the Eighth Circuit Court of Appeals noted that a request by law enforcement for a suspect's address, telephone number, marital status, place of employment, and home address are basic identification information and *Miranda* warnings are not required. McLaughlin, 777 F.2d at 391-92. In *United States v. Hines*, 2023 WL 2441925 (8th Cir. 2023), the Eighth Circuit Court of Appeals concluded that officers' inquiries regarding the defendant's name, phone number, employment status, whether he lived in the apartment unit, and the presence of other individuals and animals in the apartment constituted a request for routine information necessary for basic identification purposes. "[A] request for routine information necessary for basic identification purposes is not interrogation unless the government agent should reasonably be aware that the information sought is directly relevant to the substantive offense

4

charged… A routine identification inquiry is not interrogation under Miranda, even if the information turns out to be incriminating." Id. (internal quotation marks and citations omitted).

In this case, Deputy Westerman asked Wierenga to identify the vehicle he was driving after keys were discovered in Wierenga's pocket. An inquiry into this type of routine information for basic identification does not trigger *Miranda*. Wierenga's vehicle was not directly relevant to the substantive offenses charged. The identification of the vehicle was a part of the booking process, and the question was not investigative in nature. As the question posed in this case falls squarely within the routine booking question exception, suppression is unwarranted.

### B. SEARCH OF THE VEHICLE

Wierenga argues the warrantless search of the vehicle was unconstitutional. The Government asserts the warrantless search falls within the automobile exception to the Fourth Amendment's warrant requirement.

The Fourth Amendment secures the persons, houses, papers, and effects of the people against unreasonable searches and seizures by the government. U.S. Const. amend. IV. The general rule is that the government must secure a warrant before conducting a search. United States v. Alberts, 721 F.2d 636, 638 (8th Cir. 1983). "Warrantless searches are presumptively unreasonable absent some exception to the warrant requirement." United States v. Kuenstler, 325 F.3d 1015, 1021 (8th Cir. 2003). One such exception is the automobile exception, which recognizes that law enforcement officers may conduct a warrantless search of a vehicle when the officers have probable cause to believe the vehicle contains contraband or other evidence of illegal activity. Chambers v. Maroney, 399 U.S. 42, 48-49 (1970); United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000). The rationale for the automobile exception was the practical challenge of obtaining

a warrant for a vehicle that could be quickly moved out of the jurisdiction. Carroll v. United States, 267 U.S. 132, 153 (1925). Since *Carroll*, the United States Supreme Court has identified an additional justification for the automobile exception: the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. South Dakota v. Opperman, 428 U.S. 364, 367 (1976). This reduced expectation of privacy is based, in part, upon the relative openness of a car's passenger compartment, Cardwell v. Lewis, 417 U.S. 583, 590 (1974), but the Supreme Court has also applied the automobile exception to searches of car trunks, Cady v. Dombrowski, 413 U.S. 433, 446 (1973), and other closed compartments. Chambers, 399 U.S. at 44. This is because the reduced expectation of privacy is also based upon the pervasive regulation of vehicles capable of traveling on the public highways. California v. Carney, 471 U.S. 386, 392 (1985).

It is well-established that when police have probable cause to search a vehicle, the Fourth Amendment does not require a warrant. See Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." Fladten, 230 F.3d at 1085 (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). "A combination of otherwise innocent factors may create probable cause. Because probable cause is a practical and common-sensical standard, an officer may draw inferences based on his own experience to determine whether probable cause exists." United States v. Soderman, 983 F.3d 369, 375 (8th Cir. 2020) (internal quotation marks and citations omitted). "[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication." United States v. Horne, 4 F.3d 579, 585 (8th Cir. 1993).

Once probable cause is established to search a vehicle, officers are justified in searching every part of the vehicle and its contents, including its trunk, that may conceal the object of the search. United States v. Ross, 456 U.S. 798, 825 (1982); Eisenberg, 807 F.3d at 1452.

The record reveals the officers involved in the arrest and investigation of Wierenga were aware Wierenga posted multiple social media threats against Trinity Hospital and its employees. In particular, approximately one week prior to his arrest Wierenga attempted to post a threat on a social media page advising that people should avoid entrances to Trinity Hospital to save their lives.

Law enforcement confirmed the vehicle was registered to Wierenga because of the license plates on the passenger front seat floorboard of the vehicle that matched the registration of the Hyundai Tiburon registered to Wierenga. According to Deputy Westerman, the placement of fictitious emblems on a vehicle is a tactic used to create confusion among law enforcement by making a vehicle more difficult to identify. The firearm case Deputy Westerman observed in plain view on the passenger seat of Wierenga's vehicle caught his attention due to the nature of Wierenga's charges and the events leading to Wierenga's arrest. Deputy Westerman was able to identify it as a firearm case because of his familiarity with firearms and firearm cases. Deputy Westerman established he has never seen any item other than firearms or firearm accessories housed in a case like the one he observed on the passenger seat of Wierenga's vehicle. A reasonable person could believe there would be a fair probability of finding a firearm in the Tiburon Hyundai based on the firearm case located on the passenger seat and Wierenga's threats leading to the terrorizing, harassment, and menacing charges.

Wierenga argues law enforcement did not have probable cause to believe there was a firearm in the case because Wierenga's firearms were seized consistent with a court order.

However, Deputy Westerman testified it was unlikely law enforcement took the gun housed in the case on the passenger seat and then left the case when Wierenga's firearms were seized. He stated law enforcement's typical practice is to take the case along with the gun for safe transportation of the firearm. This led Deputy Westerman to believe a gun was in the firearm case or near the firearm case in the vehicle. In Deputy Westerman's opinion there is no reason to put a firearm case in a vehicle if the firearm is not in a vehicle. Similarly, in Officer Mehlhoff's experience when a firearm case is in a location and empty, a firearm is likely located nearby. In addition, Officer Stanfield testified that Wierenga could have purchased a firearm from a third-party seller after the seizure of his firearms.

Deputy Westerman and Officer Mehlhoff did not rely solely on hunches as the Defendant argues. Their testimony clearly established they drew reasonable inferences based on their experiences involving firearms and firearm cases in determining probable cause existed. Law enforcement's knowledge of Wierenga threats involving violence and firearms, their knowledge that Wierenga could not legally possess a firearm, and their identification of the firearm case located in Wierenga's vehicle provided sufficient probable cause to search the vehicle. Therefore, the officers were justified in searching every part of the vehicle that may contain a firearm, which includes the firearm case and the center console. Accordingly, the Court finds the search of the vehicle was lawful.

### III.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' arguments, the evidence presented at the suppression hearing, and the relevant case law. For the reasons outlined above, the Court **DENIES** the Defendant's motion to suppress (Doc. No. 19).

**IT IS SO ORDERED.**

Dated this 14th day of March, 2023.

                                                      */s/ Daniel L. Hovland*
                                                      Daniel L. Hovland, District Judge
                                                      United States District Court